**E-FILED on**   7/10/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MOHIT NARAYAN, HANNA RAHAWI, and THOMAS HEATH, on behalf of themselves, all others similarly situated, and the general public,<br><br>            Plaintiffs,<br>    v.<br>EGL, INC., a Texas Corporation; EAGLE FREIGHT SYSTEMS, INC.; and DOES 1-10, inclusive,<br><br>            Defendants. | No. C-05-04181 RMW<br><br>ORDER GRANTING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT ON PLAINTIFFS' INDIVIDUAL CLAIMS<br><br>**[Docket Nos. 60, 65, 70]** |

Defendant EGL, Inc. ("EGL") moves for summary judgment on the individual claims[1] of plaintiffs Mohit Narayan ("Narayan"), Hanna Rahawi ("Rahawi"), and Thomas Heath ("Heath"). Plaintiffs oppose EGL's motions. Plaintiffs also object to certain evidence submitted by EGL in support of its motions for summary judgment. The court has read the moving and responding papers and considered the arguments of counsel. For the reasons set forth below, the court GRANTS defendant's motions for summary judgment on plaintiffs' individual claims.

---

[1] Phase I of this litigation deals with the claims of individual plaintiffs and not any claims made on behalf of the putative class.

ORDER GRANTING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT ON PLAINTIFFS' INDIVIDUAL CLAIMS
C-05-04181 RMW
SPT

# I. BACKGROUND

This action was originally filed in Santa Clara Superior Court and removed to this court on grounds of diversity.[2] Plaintiffs filed their First Amended Complaint ("FAC") alleging nine claims for relief under California labor codes and the California unfair competition law. Plaintiffs make the claims individually, on behalf of a purported class of similarly situated persons, and on behalf of the general public. The present motion deals only with plaintiffs' asserted individual claims.

## A. Defendants

Defendant EGL is incorporated under the laws of Texas and is headquartered in Texas. FAC ¶ 10. Defendant Eagle Freight Systems, Inc. ("EFS") is a wholly-owned subsidiary of EGL. *Id.* ¶ 11. EGL provides global transportation, supply chain management, and information services. Decl. of Martha DeLeon-Schmidt Supp. Def.'s Mot. Summ. J. ("Schmidt Decl.")[3] ¶ 2. Its services include "air and ocean freight forwarding, customs brokerage, local pickup and delivery service, materials management, warehousing, trade facilitation and procurement and integrated logistics and supply chain management services." *Id.* ¶ 3. EGL operates through a "network of approximately 400 facilities, agents and distribution centers located in over 100 countries." *Id.* EGL generally contracts with trucking businesses for pick up and delivery services rather than employing its own drivers or EGL-owned vehicles for such services. *Id.* ¶ 5.[4] EGL refers to these trucking businesses as "owner-operators" or "contractors" who receive delivery jobs from Eagle. *Id.* ¶ 6. Plaintiffs fall in this category of workers for EGL. They own, operate, and maintain the vehicles used for the EGL

---

[2] Plaintiffs purport to bring the action as a class action. FAC ¶ 36. Plaintiffs' action has not been certified as a class action. Although the FAC was filed after the action was removed to federal court, plaintiffs' FAC allege that their claims may be properly maintained as a class action under Cal. Code Civ. P. § 382.

[3] According to her declaration, Ms. DeLeon-Schmidt is employed by EGL Global Logistics LP, a wholly owned subsidiary of EGL, in the capacity of Director of Safety and Compliance. She represents that she is responsible for, *inter alia*, EGL's business relationship with owner operators in California.

[4] Plaintiffs' objection to the these facts on the grounds of lack of foundation, improper opinion, and relevance are overruled. These facts, as stated in the Schmidt Decl., are consistent with plaintiffs' own deposition testimony. Background information about EGL's business is relevant to the present action and the court is satisfied that a director level employee is familiar with the general operations of the company. The testimony appears to be from personal knowledge.

delivery jobs and may either perform the services themselves or employ qualified drivers to assist them. *Id.* In addition, plaintiffs receive a percentage of an applicable tariff for each load, which may vary based on the particular shipment. *Id.* ¶ 7.[5]

EGL delivery jobs are obtained by individual truckers from a dispatch station. The contracted truckers make themselves available at their own discretion. *Id.* ¶ 8[6]; *see, e.g.*, Decl. of Jill Vizas Supp. EGL's Mot. Summ. J. Narayan's Claims ("Vizas Decl. I"), Ex. A (Narayan Depo.) at 215:7-217:22. Accordingly, the contracted truckers with availability go to a dispatch station to receive a "delivery packet," which is generally grouped geographically and may include customer time and delivery specific requirements. *Id.* ¶ 9. The contracted truckers determine how to route the orders in the assigned delivery packet. *Id.* ¶ 10. Upon completion of the deliveries, the contracted truckers update delivery status with the dispatch station. *Id.* ¶ 11. EGL pays the contracted truckers based on submitted delivery manifests. *Id.* ¶ 12.[7]

**B.    Plaintiffs**

Plaintiffs work as truck drivers for EGL and perform freight pick-up and delivery services for EGL. *Id.* ¶¶ 2, 7-9. Plaintiffs allege that they and others who perform such services for EGL in California are "employees" of EGL under California law. *Id.* ¶ 2. Plaintiffs allege that EGL misclassifies its drivers as "independent contractors" in order to avoid various duties and obligations owed to employees under California law. *Id.* ¶ 3.

**1.    Mohit Narayan**

Plaintiff Narayan started "MCAC Transfer," his own trucking business, in early 1998. Vizas Decl. I, Ex. A (Narayan Depo.) at 143:18-145:6. For approximately the first year and a half, Narayan provided delivery services as an owner-operator or independent contractor for two companies: Merchant Home Delivery and GeoLogistics. *Id.* at 51:1-52:15. In June 1999 Narayan

---

[5]     Plaintiffs' objection on grounds of lack of foundation and improper opinion are overruled for the reasons set forth in n.4, *supra*.

[6]     Plaintiffs' objection on grounds of lack of foundation and improper opinion are overruled for the reasons set forth in n.4, *supra*.

[7]     Plaintiffs' objection on grounds of lack of foundation and improper opinion are overruled for the reasons set forth in n.4, *supra*.

1  entered into the Eagle Freight Services, Inc. Agreement for Leased Equipment and Independent
2  Contractor Services (Pick-up & Delivery) with EFS ("Narayan 1999 Agreement"). *Id.* at 52:17-
3  53:3; 81:7-82:25; Vizas Decl. I, Ex. B at EGL000134-EGL000149. In May 2000 Narayan entered
4  into another Eagle Freight Services, Inc. Agreement for Leased Equipment and Independent
5  Contractor Services (Pick-up & Delivery) with EFS ("Narayan 2000 Agreement"). Vizas Decl. I,
6  Ex. A at 110:7-112:15; Vizas Decl. I, Ex. B at P00030-P00051.

7  These agreements provide, *inter alia*, that Narayan comply with EGL requirements dictated
8  by safety and other governmental regulations, EGL customer service requirements, and EGL
9  policies and practices. *See* Vizas Decl. I, Ex. B (Narayan 1999 Agreement & Narayan 2000
10 Agreement) at EGL000136-EGL000137 § 2.07, EGL000137-EGL000138 § 2.10, EGL000138 §
11 2.11, P00033 § 2.07, P00034-P00035 § 2.10, P00035 § 2.11. These agreements may be terminated
12 by either party without cause with thirty days' notice. *Id.* at EGL000145 § 6.03(c), P00042-P00043
13 § 6.03(c).

14      **2.    Hanna Rahawi**

15 Plaintiff Rahawi worked as a pick-up and delivery driver for EGL from "approximately 2000
16 to October 2005." Decl. of Hanna Rahawi Supp. Opp'n EGL's Mot. Summ. J. ("Rahawi Decl.") ¶ 2.
17 During his first year at EGL, Rahawi continued to work as a truck driver for Cal State Express, his
18 prior employer, during weekdays and worked for EGL on weekends. Decl. of Jill Vizas Supp.
19 EGL's Mot. Summ. J. Rahawi's Claims ("Vizas Decl. II"), Ex. A (Rahawi Depo.) at 62:20-24.
20 Thereafter, he went full-time with EGL upon EGL's request and began driving weekdays and
21 weekends for EGL. *Id.* at 62:25-63:20. While working for EGL, Rahawi also subcontracted another
22 driver to drive a second truck on his behalf to make deliveries for Cal State Express. *Id.* at 340:7-
23 341:14. At EGL, Rahawi worked both as a "floater" driving different routes each day depending on
24 EGL's needs and as a "route driver" making pick ups and deliveries in the same general geographic
25 area. *Id.* ¶ 7. Virtually all of Rahawi's deliveries were within fifty to seventy-five miles of the EGL
26 station he reported to. Rahawi was paid a percentage of the "tariff" EGL charged customers based
27 on the weight of the freight and distance driven, subject to a weight cap. *Id.* ¶ 30.

28      In August 2000 Rahawi entered into the Eagle Freight Services, Inc. Agreement for Leased

1  Equipment and Independent Contractor Services (Pick-up & Delivery) with EFS ("Rahawi 2000
2  Agreement"). Vizas Decl. II, Ex. B at EGL000234-EGL000250. The Rahawi 2000 Agreement
3  provided, *inter alia*, that Rahawi comply with EGL requirements dictated by safety and other
4  governmental regulations, EGL customer service requirements, and EGL policies and practices. *See*
5  Vizas Decl. II, Ex. B at EGL000237 § 2.07, EGL000238-EGL000239 § 2.10, EGL000239 § 2.11.
6  The Rahawi 2000 Agreement provides for termination by either party without cause with thirty days'
7  notice. *Id.* at EGL000246-EGL000247 § 6.03(c).

8      In October 2005 EGL terminated Rahawi's contract following his suspension from work
9  related to an argument he had with a dispatcher regarding refusal to pick up assignments. *Id.* ¶ 35.

10      **3.    Thomas Heath**

11      Plaintiff Heath began doing business as "Tom's Express" in approximately November 1995,
12  making deliveries. Decl. of Jill Vizas Supp. EGL's Mot. Summ. J. Heath's Claims ("Vizas Decl.
13  III"), Ex. A (Heath Depo.) at 31:11-25. In 1999 he sold his Tom's Express truck. In December 1999
14  he bought a new van and began working for EGL. *Id.* at 32:1-13. He worked as a pick-up and
15  delivery driver for EGL from approximately December 1999 to July 2002. Decl. of Thomas Heath
16  Supp. Opp'n EGL's Mot. Summ. J. ("Heath Decl.") ¶ 2. Heath worked out of EGL's Sacramento
17  station. *Id.* ¶ 4. He worked five days a week plus an occasional Saturday for EGL. *Id.* ¶ 23. He
18  generally worked over six hours a day for EGL and typically worked approximately twelve hours or
19  more a day for EGL. *Id.* ¶ 22. Heath was paid a percentage of the "tariff" EGL charged customers
20  based on the weight of the freight and distance driven. *Id.* ¶ 25. At times Heath was assigned as a
21  "second man" to assist another driver on a job and, on those occasions, was paid hourly by EGL. *Id.*
22  ¶ 28. On other occasions, EGL assigned Heath a "second man" to assist in deliveries designated as
23  requiring two workers. On those occasions, EGL assigned and paid the worker directly. *Id.*

24      In December 1999 Heath entered into the Eagle Freight Services, Inc. Agreement for Leased
25  Equipment and Independent Contractor Services (Pick-up & Delivery) with EFS ("Heath 1999
26  Agreement"). Vizas Decl. III, Ex. B at EGL000324-EGL000338. In May 2000 Heath entered into
27  another Eagle Freight Services, Inc. Agreement for Leased Equipment and Independent Contractor
28  Services (Pick-up & Delivery) with EFS ("Heath 2000 Agreement"). *Id.* at P00812-P00832. These

agreements provided, *inter alia*, that Heath comply with EGL requirements dictated by safety and other governmental regulations, EGL customer service requirements, and EGL policies and practices. *See* Vizas Decl. III, Ex. B at EGL000326 § 2.07, EGL000327-EGL000328 § 2.10, EGL000328 § 2.11, P00815-P00816 § 2.07, P00816-P00817 § 2.10, P00817 § 2.11. These agreements could be terminated by either party without cause with thirty days' notice. *Id.* at P00824-P00825 § 6.03(c).[8]

For convenience the Narayan 1999 Agreement, Narayan 2000 Agreement, the Rahawi 2000 Agreement, the Heath 1999 Agreement, and the Heath 2000 Agreement shall collectively be referred to in this order as the Services Agreements unless otherwise specified.

## II.  ANALYSIS

### A.  Summary Judgment

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* In a motion for summary judgment, the court draws all reasonable inferences that may be taken from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Central to plaintiffs' claims is whether plaintiffs' status with EGL is that of employees or that of independent contractors.

### B.  Choice of Law

EGL argues that this court should apply the laws of the state of Texas to interpret the Services Agreements and to determine whether plaintiffs were employees or independent contractors of EGL based on the choice-of-law provision in the Services Agreements. Plaintiffs contend that California law should be applied notwithstanding the choice-of-law provisions because (1) plaintiffs'

---

[8] The copy of the Heath 1999 Agreement set forth in Vizas Decl. III, Ex. B is missing the page of the agreement containing the particular termination provisions. Therefore, the court cites only to the provision in the Heath 2000 Agreement.

claims do not arise from the Services Agreements, but from California's Labor Code and (2) Texas law does not provide "the fundamental worker protections that California law does" and, therefore, is "contrary to a fundamental public policy of California." *See* Pl. Narayan's Opp'n EGL's Mot. Summ. J. at 12:2-16.

### 1. Scope of Choice-of-Law Provision

Plaintiffs' first argument appears to be that their claims fall outside the scope of the choice-of-law provision in the Services Agreements. "In determining the enforceability of arm's-length contractual choice-of-law provisions, California courts shall apply the principles set forth in Restatement section 187, which reflects a strong policy favoring enforcement of such provisions." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464-65 (1992). However, an initial issue is whether the choice-of-law provision at issue is broad enough to encompass the claims before the court. *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 916 (2001) ("the trial court should first examine the choice-of-law clause and ascertain whether the advocate of the clause has met its burden of establishing that the various claims of putative class members fall within its scope").

The scope of a choice-of-law provision is ordinarily determined under the law designated in the contract between the parties. *Wash. Mut. Bank*, 24 Cal. 4th at 916 n.3; *Nedlloyd*, 3 Cal. 4th at 469 n.7. Here, the choice-of-law provision in the Services Agreements provides: "This Agreement shall be interpreted under the laws of the State of Texas." Vizas Decl. I, Ex. B at EGL000146 § 7.03, P00045 § 7.03; Vizas Decl. II, Ex. B at EGL000249 § 7.03; Vizas Decl. III, Ex. B at EGL000335 § 7.03, P00827 § 7.03. The scope of the choice-of-law provision under Texas law must, therefore, be considered. Under Texas case law, a provision such as the one in the Services Agreements applies to claims that concern the interpretation and enforcement of the contract provisions. *See Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 424 (Tex. 1999). Texas case law establishes that whether a party is an independent contractor when the contract between the parties establishes an independent contractor relationship is determinative, unless there is extrinsic evidence indicating the contract was a sham or cloak designed to conceal the true legal relationship between the parties. *Bell v. VPSI, Inc.*, 205 S.W.3d 706, 713-14 (Tex. App. 2006) (citations omitted). Here, because plaintiffs' claims necessarily turn on the issue of whether plaintiffs were or were not

1 independent contractors, their claims concern the interpretation and enforcement of the provisions in
2 their contracts with EGL.  Accordingly, plaintiffs' claims fall within the scope of the Texas choice-
3 of-law provision.

### 2. Enforceability of Choice-of-Law Provision

"In determining the enforceability of arm's-length contractual choice-of-law provisions, California courts shall apply the principles set forth in Restatement section 187, which reflects a strong policy favoring enforcement of such provisions." *Nedlloyd Lines B.V.*, 3 Cal. 4th at 464-65. Restatement (Second) of Conflicts of Law § 187(2) provides in part:[9]

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Here, it is not disputed that the first prong—whether the chosen state has a substantial relationship to the parties or transaction—is met as EGL is incorporated and headquartered in Texas.[10] *See Nedlloyd Lines*, 3 Cal. 4th at 467 (finding that a substantial relationship is clearly established where one of the parties is incorporated and has a registered office in the chosen country).

At issue is the second prong—whether application of Texas law in the present case would be contrary to a fundamental policy of the State of California.  Under the second prong, if there is a fundamental conflict with California law, "the court must then determine whether California has a materially greater interest than the chosen state in the determination of the particular issue." *Id.* at

---

[9] Section 187(1) provides: "(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue."  However, defendant does not appear to assert that the choice of law provision should be given effect on this basis. *See* Def.'s Mot. Summ. J. Narayan's Claims at 7:15-8:4 (arguing that the court looks first to whether the chosen state has a substantial relationship to the parties or the transaction and then considers whether the application of Texas law is contrary to a fundamental policy of California).

[10] It is also undisputed that California law would apply under the rule of § 188 absent an effective choice of law provision.

1  466 (internal citation and quotation marks omitted).  If so, the choice of law provision is not
2  enforced.  *Id.*

3  Plaintiffs argue that application of Texas law in this case would be contrary to California law
4  because Texas law does not provide the fundamental worker protections that California law does.  In
5  support, plaintiffs cite several California cases which hold that California policy seeks to protect
6  workers' wages and welfare, to avoid employees from suffering expenses in direct consequences of
7  doing their jobs, and to protect against fraud and deceit in the employment relationship.  *See Kerr's*
8  *Catering Serv. v. DIR*, 57 Cal. 2d 319, 326 (1962); *Phillips v. Gemini Moving Specialists*, 63 Cal.
9  App. 4th 563, 574 (1998); *Grissom v. Vons Cos.*, 1 Cal. App. 4th 52, 59-60 (1991); *Hudgins v.*
10 *Neiman Marcus Group*, 34 Cal. App. 4th 1109, 1118-19 (1995).  However, the cases cited by
11 plaintiffs discuss fundamental policies protecting *employees*, such as prompt payment of wages due
12 employees, *see Kerr's Catering*, 57 Cal. 2d at 326, protection of an employee's wage, *see Phillips*,
13 63 Cal. App. 4th at 574, protection of an employee from suffering expenses in direct consequence of
14 doing their jobs, *Grissom*, 1 Cal. App. 4th at 59-60, and protection "against fraud and deceit in the
15 employment relationship," *Hudgins*, 34 Cal. App. 4th at 1118-19.  These policies are reflected in
16 statutory provisions for the protection of employees.  *See, e.g., Grissom*, 1 Cal. App. 4th at 60
17 (noting that the rights that Cal. Labor Code § 2802 creates are statutory, not contractual); *Hudgins*,
18 34 Cal. App. 4th at 1118-19 (noting that the policy stems from Cal. Labor Code §§ 222 and 223).
19 Plaintiffs' reliance upon California's policies protecting employees presupposes that plaintiffs are
20 employees of EGL.  However, for purposes of determining the enforceability of the choice-of-law
21 provision, the issue before this court is whether plaintiffs were employees or whether they were
22 independent contractors.

23 Plaintiffs argue that application of Texas law would contradict California policies protecting
24 employees and employee wages because, according to plaintiffs, there is a lower threshold for
25 classifying a worker as an independent contractor rather than an employee under Texas law.  For
26 example, plaintiffs contend that California law presumes employee status under its wage and hour
27 laws but Texas law does not, and Texas law gives significant weight to the parties' contractual
28 characterization of a contractor relationship while California law gives little weight to the

ORDER GRANTING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT ON PLAINTIFFS' INDIVIDUAL CLAIMS
C-05-04181 RMW
SPT                                             9

contractual classification if the actual conduct support an employment relationship. Plaintiffs' argument fails for two reasons.

First, the classification of a worker as an independent contractor rather than as an employee does not contradict fundamental California policy. The California Labor Code expressly recognizes a worker's classification as an independent contractor. Cal. Labor Code § 3353. In *Sistare-Meyer v. Young Men's Christian Ass'n of Metropolitan Los Angeles*, 58 Cal. App. 4th 10, 16-17 (1997), the court held that the two classifications represent competing policy interests:

> [T]he longstanding distinction between employees and independent contractors presents important competing policy concerns. California common and statutory law distinguishes independent contractors from employees, and their statuses, though both rooted in contract, are significantly different. Independent contractors typically have greater control over the way in which they carry out their work than employees, and businesses assume fewer duties with respect to independent contractors than employees. Thus, the independent contractor status provides the hiring party and the worker with an alternative relationship that gives each more freedom and flexibility than the employer-employee relationship.

(citing *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 349-54 (1948)). In *Sistare-Meyer*, the court addressed whether an independent contractor stated a claim for wrongful discharge in violation of the public policy in article I, section 8 of the California Constitution against racism in the employer-employee relationship. *Id.* at 14. The court concluded that the policy stated in article I, section 8 does not reach beyond the employer-employee relationship to encompass independent contractors. *Id.* at 17. The court reasoned "the uncertainties concerning the balance of competing public interests bar us from finding that the policy asserted by California Constitution, article I, section 8 supports appellant's *Tameny* claim." *Id.*

Second, with respect to whether a choice-of-law provision should be disregarded because of conflicts with fundamental policy, the comments to Restatement (Second) of Conflicts § 187 state:

> The forum will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law. Application of the chosen law will be refused only (1) to protect a fundamental policy of the state which, under the rule of § 188, would be the state of the otherwise applicable law, provided (2) that this state has a materially greater interest than the state of the chosen law in the determination of the particular issue.

Restatement (Second) of Conflicts § 187, cmt. g. Here, although plaintiffs argue that California wage and hour laws presume employee status, *see* Pls.' Opp'n at 13:9-10, it is unclear what case law

1  plaintiffs cite in support of such a proposition. It does not appear that California law generally
2  presumes employee status rather than independent contractor status. *See Plute v. Roadway Package*
3  *Sys., Inc.*, 141 F. Supp. 2d 1005, 1009 ("Under California law, '[t]he principal test of an employment
4  relationship is whether the person to whom service is rendered has the right to control the manner
5  and means of accomplishing the result desired.'") (citing *S.G. Borello & Sons*, 48 Cal. 3d at 350); *cf.*
6  *An Independent Home Support Serv., Inc. v. Superior Court*, 145 Cal. App. 4th 1418, 1428-29
7  (2006) (holding that although the Workers' Compensation Act must be liberally construed and
8  includes a "general presumption that any person 'in service to another' is a covered 'employee,'" an
9  independent contractor is not covered) (citations omitted). Indeed, the same test applies under both
10 Texas and California law. *Compare Plute*, 141 F. Supp. 2d at 1009 ("Under California law, '[t]he
11 principal test of an employment relationship is whether the person to whom service is rendered has
12 the right to control the manner and means of accomplishing the result desired.'") (citation omitted)
13 *with Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002) (per curiam)
14 (holding that under Texas law, "[t]he test to determine whether a worker is an employee rather than
15 an independent contractor is whether the employer has the right to control the progress, details, and
16 methods of operations of the work.") (citations omitted). Therefore, Texas law will be applied to
17 determine whether the plaintiffs are employees or whether they are independent contractors of EGL.

      **C.**     **Classification as Employee or Independent Contractor**

19       Under Texas law, "[t]he test to determine whether a worker is an employee rather than an
20 independent contractor is whether the employer has the right to control the progress, details, and
21 methods of operations of the work." *Limestone*, 71 S.W.3d at 312. The employer controls not
22 merely the end sought to be accomplished, but also the means and details of its accomplishment. *Id.*
23 (citations omitted). The right to control is measured by considering: "(1) the independent nature of
24 the worker's business; (2) the worker's obligation to furnish necessary tools, supplies, and materials
25 to perform the job; (3) the worker's right to control the progress of the work except about final
26 results; (4) the time for which the worker is employed; and (5) the method of payment, whether by
27 unit of time or by the job." *Id.* (citations omitted).
28       In *Limestone*, the court considered whether a truck driver for Limestone Products

1  Distribution ("Limestone") was an employee or an independent contractor in a personal injury suit
2  naming Limestone as a defendant liable for the acts of the truck driver. 71 S.W.3d at 309. The court
3  concluded: "When we apply the right-to-control test to the summary-judgment evidence here, we
4  hold that it conclusively shows that Mathis was an independent contractor when the accident
5  occurred." *Id.* at 312. The court concluded that the undisputed facts support that the truck driver
6  was an independent contractor as a matter of law. *Id.* The court reasoned that summary judgment
7  was appropriate because "[a]lthough some of these factors may not, alone, be enough to demonstrate
8  a worker's independent-contractor status, together they provide conclusive summary-judgment
9  evidence that Mathis was an independent contractor and not Limestone's employee when the
10 accident occurred." *Id.* at 313.

11      In reaching its conclusion that the truck driver was an independent contractor rather than an
12 employee, the court relied upon several aspects of the relationship between the driver and
13 Limestone. First, Mathis, the driver, was paid by the job—he received no pay if there was no work.
14 *Id.* Second, although Limestone told Mathis where to pick up and drop off loads, and Mathis had to
15 turn in his load tickets to get paid, he nevertheless had broad discretion in how to do everything else.
16 *Id.* For example, he was free to drive any route he wished when delivering for Limestone as long as
17 he timely delivered the load. *Id.* Third, Mathis did not work regular hours and did not have to visit
18 the office on a regular basis, although he went there to pick up assignments or turn in load tickets.
19 *Id.* Fourth, Limestone did not supply any tools or equipment needed and used for the deliveries.
20 Rather, Mathis owned and used his own truck for deliveries, and paid for his truck's gasoline,
21 repairs, and insurance. *Id.* Finally, the driver's income was reported on IRS Form 1099 rather than a
22 form W-2 and Limestone did not pay the driver for vacation, sick leave, or holidays or withhold for
23 social security and federal income taxes. *Id.* at 312-13.

24      Here, the circumstances of plaintiffs' work relationship with EGL are very similar to the
25 relationship at issue in *Limestone*. Plaintiffs own, operate, and maintain the vehicles used for the
26 EGL delivery jobs and may either perform the services themselves or employ qualified drivers to
27 assist them. In addition, plaintiffs receive a percentage of an applicable tariff for each load, which
28 may vary based on the particular shipment. They are not paid hourly or based on salary. Although

plaintiffs argue that they have been reminded that they need to submit vacation requests in writing, plaintiffs admit in depositions that they do not always make vacation requests and make themselves available at their own discretion. When they have availability they go to a dispatch station to receive a "delivery packet," which is generally grouped geographically and may include customer time and delivery specific requirements. Plaintiffs also determine how to route the orders in the assigned delivery packet. Upon completion of the deliveries, plaintiffs update delivery status with the dispatch station. Plaintiffs must submit delivery manifests to EGL in order to get paid. *Id.* ¶ 12.[11] Based on *Limestone*, these facts support a showing that plaintiffs were independent contractors.

Plaintiffs further argue that EGL's assignment practices show that plaintiffs were employees regardless of the independent contractor contracts they signed with EGL. Specifically, plaintiffs assert that (1) EGL determined what deliveries and pick ups to assign plaintiffs, where and when the assignments would be performed, and what price would be charged the customer; (2) EGL provided detailed instructions such as special handling and what to do at the delivery site; (3) EGL required plaintiffs to document their work using EGL forms and EGL's electronic tracking system (eMAD); and (4) EGL "stayed in near constant contact with plaintiff as he progressed through his work assignments." Pl. Narayan's Opp'n at 15:9-21. However, as the *Limestone* court stated, it is control over the means and details of accomplishment, and not merely control over the end result, that could give rise to an employment relationship. 71 S.W.3d at 312, 313. That EGL dictated the location of deliveries, the price to charge customers, and the adherence to special handling and delivery instructions shows only control over the ends to be achieved—that is, EGL sought to ensure that customers received deliveries timely and in accordance with special handling or delivery instructions. Similarly, the requirement to use EGL forms and its tracking system does not raise a triable fact that EGL has the right to control the details of how plaintiffs completed their specific assignments.

---

[11] Plaintiffs' objection on grounds of lack of foundation and improper opinion are overruled for the reasons set forth in n.4, *supra*.

Plaintiffs also assert that EGL controlled the appearance of the drivers and their trucks by requiring, *inter alia*, uniforms, drivers' logs, daily vehicle inspections, accident and incident reporting, drug tests, road tests, and vehicle decaling.  Decl. of Fritz Kahn Supp. Pls.' Opp'n ("Kahn Decl.") ¶¶ 11-20.  EGL issued directives to its drivers to, for example, follow special delivery instructions, review special instructions requested by customers and comply with such requests "fully and completely," and work to ensure customer satisfaction. Narayan Decl. ¶ 40, Ex. 9. Plaintiffs were required to attend an initial orientation and information sessions regarding EFS's business, its policies, operational procedures, service offerings and pick-up and delivery techniques."  Vizas Decl. I, Ex. B at EGL 000138 § 2.11; Vizas Decl. II, Ex. B at EGL000239 § 2.11; Vizas Decl. III, Ex. B at EGL000328 § 2.11.

In *Bell*, the court concluded that facts showing that the contract between the employer and the driver required the driver to keep the van clean, buy gas only from major name-brand service stations, comply with recommended or required maintenance service at approved service stations, obtain advance authorization for repairs over a specific amount, refrain from driving the vehicle outside a certain mile radius, and otherwise operate the vehicle in accordance with all laws, ordinances, rules and regulations did not constitute evidence that the employer controlled the details of how the worker performed his job. 205 S.W.3d at 714-15.  The court reasoned that the contractual provisions requiring that the van be kept clean and mandating maintenance, service, and repairs did not constitute anything more than what was required for an ordinary lease or bailment and are not otherwise inconsistent with the provision that the driver was an independent contractor. Likewise, here, although the facts show that EGL exercised authority to ensure compliance with regulatory and safety requirements and general company policies, they do not amount to control over the specific tasks to be carried out by plaintiffs for their assignments and are not otherwise inconsistent with the contractual provision that plaintiffs are independent contractors.

Finally, plaintiffs point to the contractual provisions between EGL and plaintiffs that provide that EGL may terminate the drivers with 30 days' notice for no cause and immediately for failure to follow EGL instructions.  However, this provision also fails to support that plaintiffs were employees rather than independent contractors.  *See id.* at 714 ("The right to terminate an agreement

as to a worker is not evidence that details of the work are subject to the principal's control.") (citation omitted).

Taken together the facts do not show that EGL exercised control over the means and details of the tasks to be accomplished by plaintiffs pursuant to the independent contractor agreements with EGL. At best, the facts show that EGL controlled the end results. Under Texas law, this is insufficient to give rise to an employer-employee relationship.[12] Moreover, "[a] contract between the parties that establishes an independent contractor relationship is determinative of the parties' relationship in absence of extrinsic evidence indicating that the contract was a 'sham or cloak' designed to conceal the true legal relationship of the parties or that despite the contract terms, the true agreement vested the right of control in the principal." *Id.* at 713-14 (citations omitted). Here, as discussed above, the contract provisions in the Services Agreements are not inconsistent with plaintiffs' status as independent contractors and plaintiffs have offered no extrinsic evidence that the actual relationship between the parties indicate that the independent contractor designation in the contract is a sham or cloak designed to conceal the true legal relationship. Indeed, the record shows that during the relationship the parties believed there to be an independent contractor relationship, *see, e.g.,* Vizas Decl. III, Ex. A (Heath Depo.) at 143:11-24 (deposition testimony by Heath that he believed his relationship with EGL to be one of independent contractor).[13]

---

[12] The result would be no different if California law governed. As noted in *supra* § B.2, California law and Texas law set forth the same test for determining whether a worker is classified as an independent contractor or as an employee. Plaintiffs argue that the recent case of *Air Couriers Int'l v. Employment Dev. Dep't*, 150 Cal. App. 4th 923 (2007), supports their position that under California law they were employees, not independent contractors. However, in *Air Couriers*, the drivers did not have written contracts, as here, expressly acknowledging that they were independent contractors. *Id.* at 938. Further, in *Air Couriers*, the drivers drove regular routes, worked regular schedules, and were paid on regularly scheduled paydays. *Id.* at 939 n.3. In the instant case, the drivers were not required to work regular schedules, were paid on a per job basis, and determined their own routes.

[13] Plaintiffs' objection to this testimony as improper legal conclusion or otherwise improper testimony is overruled. Heath may testify as to his own belief, which is relevant to the test of his independent contractor status.

## III. ORDER

For the foregoing reasons, the court GRANTS defendant's motions for summary judgment on plaintiffs' individual claims.

DATED: 7/6/07

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

| | |
|---|---|
| Aaron D. Kaufmann | kaufmann@hinton-law.com |
| David Philip Pogrel | pogrel@hinton-law.com |
| Jules Sandford | jsandford@pfslaw.com |
| Lorraine Grindstaff | lgrindstaff@pfslaw.com |

**Counsel for Defendants:**

| | |
|---|---|
| Karen J. Kubin | kkubin@akingump.com |
| Heather Burror | hburror@akingump.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** 7/10/07      SPT
**Chambers of Judge Whyte**