**E-FILED on __9/7/2012____**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| MOHIT NARAYAN, HANNA RAHAWI, THOMAS HEATH and UGO IHEONU, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>EGL, INC., a Texas Corporation; CEVA Freight, LLC, a Delaware Corporation, and DOES 2-10, inclusive,<br><br>        Defendants. | No. C-05-04181 RMW<br><br><br>ORDER DENYING MOTION FOR CLASS CERTIFICATION<br><br><br><br>**[Re Docket Nos. 171, 188]** |

        Plaintiffs move for certification of a class and three subclasses.  Defendants EGL, Inc. and

CEVA Freight, LLC (collectively, "CEVA") oppose the motion.  On March 30, 2012, the court held

a hearing to consider plaintiffs' motion.  Having considered the papers submitted by the parties and

the arguments of counsel, and for the reasons set forth below, the court denies the motion.

## I. BACKGROUND

### A.    Factual Background

        Defendant EGL, Inc. ("EGL") operated a freight transport business, providing local pick-up

and delivery services.  In August 2007, defendant CEVA Freight, LLC ("CEVA Freight") acquired

EGL and continued EGL's operations in all relevant respects.  During the class period, defendants

United States District Court
For the Northern District of California

operated facilities in the San Francisco Bay Area, Sacramento, San Diego, Ontario, and the Los Angeles Airport ("LAX") area.

Plaintiffs and the putative class members are drivers who entered into written "independent contractor services" agreements and personally provided pick-up and delivery services for defendants in California during the class period.  Plaintiffs contend that, contrary to the language of the contract, the putative class members were employees and, in treating them as independent contractors, defendants violated various provisions of California's Labor Code by, *inter alia*, failing to reimburse them for business expenses, making unlawful deductions from wages, forcing them to lease or purchase certain equipment and services, failing to provide off-duty meal periods, and failing to pay minimum wage.  The class period runs from September 12, 2001 through October 16, 2011.[1]

In performing services for defendants, plaintiffs and putative class members drove "straight" or "bobtail" trucks, cargo vans, or tractor-trailer rigs.  The drivers would report to a station's dispatch office to be placed on a waiting list for assignments.  After assignments were made, drivers would wait for defendants' freight handlers to move the day's deliveries from the warehouse to a designated dock port.  After loading, the drivers turned in a manifest form that listed all freight on board their vehicle and then made their delivery and pick-up stops at customer locations.  Drivers could receive additional assignments from dispatch while out in the field.  Drivers would typically return to the station at the end of the workday to unload freight and turn in completed paperwork and COD payments.

Plaintiffs and the putative class members each entered a form contract titled "Agreement for Leased Equipment and Independent Contractor Services (Pick-Up & Delivery)" ("Driver Agreement," Dkt. No. 191-2).  Drivers were also bound by the "Safety & Compliance Policy Manual for Independent Contractors" ("Driver Manual," Dkt. No. 173-6).  Defendants' policies required drivers to purchase and wear a uniform with the company logo and required that all vehicles be painted white, bear the company logo in specified places, and be no older than five

---

[1] On September 16, 2011, CEVA notified all current drivers that it was terminating their contracts in 30 days and required drivers wishing to stay on with the company to sign a new agreement, to take effect on October 17, 2011, that differs from the agreement at issue in this case.

**United States District Court**
For the Northern District of California

1  (later, seven) years old.  Drivers were required to follow certain instructions in performing

2  assignments, including, in some instances, standard operating procedures that incorporated

3  contractual commitments to customers.  In addition, drivers carried out their assignments using

4  company-provided packing and shipping supplies, recorded pick-ups and deliveries using company-

5  standardized documentation procedures, and used specific electronic tracking systems.  CEVA also

6  specified other aspects of the drivers' operations, such as types of insurance carried and minimum

7  coverage levels and accident reporting protocols.

8      Defendants paid drivers weekly, based on standardized "settlement" procedures.  Most

9  payment was based on a contractually set percentage of the amount defendants charged customers,

10  which was in turn based on freight weight and distance driven.  Drivers could also receive payment

11  for services in addition to basic delivery or pick-up, known as "accessorials."  Drivers were required

12  to bear their own operating expenses, including vehicle operation costs such as purchase or lease,

13  fuel, maintenance, and repairs; vehicle registration and licensing; insurance coverage; hand-held

14  NEXTEL device and service for recording assignments; and company uniforms and logos.  In

15  addition, with CEVA's approval, drivers could add vehicles or hire sub-drivers or "helpers" that

16  performed under the same contract.  A driver supervised his sub-drivers and could set their

17  compensation.

18      Named plaintiffs are all former drivers for defendants.  Plaintiff Mohit Narayan drove a

19  bobtail truck for EGL from July 1999 to September 2006, operating out of the Sacramento station.

20  Plaintiff Hanna Rahawi drove a bobtail truck for EGL from approximately 2000 to October 2005,

21  operating out of the San Francisco station.  Plaintiff Thomas Heath drove a van for EGL from

22  December 1999 to July 2002, operating out of the Sacramento station.  Plaintiff Ugo Iheonu drove a

23  van and bobtail truck for EGL and CEVA Freight from 1998 to 2008, operating out of the LAX

24  station.

25      Plaintiffs seek to certify the following class and sub-classes:

26   •   Drivers Class: All persons who are or have operated as pick-up and delivery drivers
         for defendants EGL, Inc. and/or CEVA Freight, LLC in the State of California under
27       an "independent contractor services" contract or similar written contract (referred to
         as "Drivers") during the period from September 12, 2001 through October 16, 2011.
28

ORDER DENYING MOTION FOR CLASS CERTIFICATION—No. C-05-04181 RMW
LJP                                        3

- • <u>Drivers with Sub-Drivers Sub-Class</u>: All Drivers during any time period when they engaged one or more individuals referred to by EGL, Inc. and/or CEVA Freight, LLC as "activated sub-contractors" for the purposes of driving a vehicle to perform pick-up and delivery services for EGL, Inc. and/or CEVA Freight, LLC.

- • <u>Drivers without Sub-Drivers Sub-Class</u>: All Drivers during any time period during which they did not engage one or more individuals referred to by EGL, Inc. and/or CEVA Freight, LLC as "activated sub-contractors" for the purposes of driving a vehicle to perform pick-up and delivery services for EGL, Inc. and/or CEVA Freight, LLC.

- • <u>Van Drivers Sub-Class</u>: All Drivers during any time period when they operated vehicles with a gross vehicle weight rating of less than 10,001 pounds, including but not limited to small step package vans.

Most of plaintiffs' claims are asserted on behalf of all Drivers, but plaintiffs have asserted a claim for unpaid overtime only as to Van Drivers. All four named plaintiffs seek appointment as representatives of the Drivers Class and Drivers without Sub-Drivers Sub-Class. Iheonu also seeks appointment as representative of the Drivers with Sub-Drivers Sub-Class, and he and Heath seek appointment as representatives of the Van Drivers Sub-Class.

**B.    Procedural History**

This case was originally brought by plaintiffs Narayan, Rahawi, and Heath in state court and was removed to this court on October 14, 2005. After extensive discovery, defendant EGL moved for summary judgment on those plaintiffs' individual claims, and the court granted summary judgment on July 10, 2007, Dkt. No. 118. The court found that the Texas choice-of-law provision in the Service Agreement governed plaintiffs' claims and, applying Texas law, found that plaintiffs were independent contractors. *Id.* Plaintiffs appealed, and the Ninth Circuit reversed and remanded on July 13, 2010. *See Narayan v. EGL, Inc.*, 616 F.3d 895 (9th Cir. 2010).

The Ninth Circuit began by finding that plaintiffs' claim did not arise out of the contract and therefore were not within the scope of the Texas choice-of-law provision. *Id.* at 898-99. Next, the Ninth Circuit set forth the framework under California law for determining whether plaintiffs were employees or independent contractors. *Id.* at 900-01; *see* discussion *infra*. As to the case at hand, the court found "[t]he inferences here are subject to legitimate dispute." *Id.* at 901. In an extensive discussion of the record evidence, the court found that the delivery services provided by drivers were an essential part of EGL's regular business; EGL controlled many details of the drivers' performance, including through detailed guidelines about their conduct and by regulating their

appearance; drivers supplied some of their own equipment but EGL provided others; drivers could employ others to assist them but only subject to EGL's approval; the renewal and termination provisions of the contract suggested an at-will employment relationship; the drivers' occupation did not require a high level of skill; and the indefinite nature of drivers' tenure suggested an employment relationship. *Id.* at 901-03. Specific to the appellants, the court noted that they did not hire any helpers and drove exclusively for EGL, and found there was "at least a material issue of fact as to whether they could have driven for other delivery companies because EGL required them to affix EGL logos to their trucks, which the plaintiff Drivers allege could not practically be covered up." *Id.* at 902.

The Ninth Circuit concluded:

> Ultimately, under California's multi-faceted test of employment, there existed at the very least sufficient indicia of an employment relationship between the plaintiff Drivers and EGL such that a reasonable jury could find the existence of such a relationship.

*Id.* at 904. The court also noted that the Internal Revenue Service and Employment Development Department of California had both determined that Narayan was an employee applying federal and California law, respectively. *Id.*

After the case was remanded, plaintiffs filed an amended complaint adding CEVA as a defendant and Iheonu as a plaintiff.

## II.  ANALYSIS

As discussed below, the court finds that plaintiffs have failed to show predominance under Rule 23(b)(3). Because that failure disposes of plaintiffs' motion, the court does not address the other aspects of Rule 23.

### A.    Legal Standards

Rule 23(a)(2) requires that there be questions of law or fact common to the class. As the Supreme Court recently explained in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), commonality requires that the claims of the class depend on a common contention that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2551. "What matters to class certification . . . is not the raising of common 'questions'–even in

droves–but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* For a class to be certified under Rule 23(b)(3), the common questions of law or fact must predominate over any questions affecting only individual members.

Here, the central question for resolving defendants' liability is whether plaintiffs and the class are in fact employees, not independent contractors. Under California law, once an individual comes forward with evidence that he provided services for an employer, he has established a prima facie case that the relationship was one of employer/employee, and the burden shifts to the employer to prove that the presumed employee was an independent contractor. *Narayan*, 616 F.3d at 900 (citing *Robinson v. George*, 105 P.2d 914, 916-17 (Cal. 1940) and *Cristler v. Express Messenger Sys., Inc.*, 171 Cal. App. 4th 72, 83-84 (2009)). The Supreme Court of California has identified numerous factors that are "logically pertinent" to determining whether a provider of service is an employee or an independent contractor. *Id.* at 900-01 (citing *S.G. Borello & Sons, Inc. v. Dept. of Indus. Rels.*, 769 P.2d 399, 48 Cal. 3d 341 (1989)). The most important factor is the right to discharge at will, without cause.[2] *Id.* at 900 (citing *Borello*, 769 P.2d at 404). Other relevant factors include:

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee
>
> . . . . [and]
>
> (1) the alleged employee's opportunity for profit or loss depending on his managerial skill; (2) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (3) whether the service rendered requires a special skill; (4) the degree of permanence of the working relationship; and (5) whether the service rendered is an integral part of the alleged employer's business.

---

[2] The court in *Borello* recognized that, in common law tradition, the principal test for an employment relationship was the right to control the manner and means of accomplishing the desired result; however, the court found that the common law distinction between employee and independent contractor was developed to define an employer's liability for injuries caused by his employee, which is substantially different from the purpose of the distinction in worker's compensation law. *See* 48 Cal. 3d at 350-52. Thus, the court held that "the 'control-of-work-details' test . . . must be applied with deference to the purposes of the protective legislation." *Id.* at 353.

1   *Id.* at 900-01 (quoting *Borello*, 769 P.2d at 404, 407).  California courts have held that "the

2   individual factors cannot be applied mechanically as separate tests; they are intertwined and their

3   weight depends on particular combinations."  *Id.* at 901 (quoting *Borello*, 769 P.2d at 404).  Thus,

4   this court must "assess and weigh all of the incidents of the relationship with the understanding that

5   no one factor is decisive."  *Id.* (quoting *NLRB v. Friendly Cab Co.*, 512 F.3d 1090, 1097 (9th Cir.

6   2007)).  For purposes of class certification, the issue is whether these factors may be applied on a

7   classwide basis, generating a classwide answer on the issue of employee status, or whether the

8   determination requires too much individualized analysis.

9          **B.      The "Distinct Occupation or Business" Factor**

10          Defendants argue that differences in the drivers' operations should defeat certification under

11   *Spencer v. BeavEx, Inc.*, 2006 WL 6500597 (S.D. Cal. 2006).  In *Spencer*, the court denied

12   certification of a class of drivers who had been treated as independent contractors by the defendant.

13   The court's decision was based on the finding that it would be administratively infeasible to

14   ascertain the members of the class, which required in part that the driver provided more than 51% of

15   his services to the defendant.  *Id.* at *9.  However, the court then addressed the Rule 23 requirements

16   assuming that a class could be sufficiently defined.  *Id.* at *10.  The court found that several of the

17   *Borello* factors constituted "significant aspects" of the case and might be capable of resolution on a

18   class basis, but concluded that individual questions of fact and law predominated because of the

19   individualized inquiry required to determine whether drivers were engaged in an occupation or

20   business distinct from that of the defendant.  *Id.* at *16.  The court noted that "[t]he issue of what use

21   different drivers make of the option to use back-ups and subs is a highly individualized question of

22   fact" and the inquiry of whether a given driver could be said to be engaged in a business distinct

23   from that of the defendant "varies significantly from driver to driver."  *Id.*  Furthermore, the court

24   found that it would not be of value to resolve some *Borello* factors by class action and others by

25   individual inquiry, because the *Borello* factors had to be viewed in conjunction, and each individual

26   driver's case "would essentially need to be relitigated after the determination of the common

27   questions of fact and law."  *Id.*

28

**United States District Court**
For the Northern District of California

1    Here, approximately 127 of 396 identified putative class members hired sub-drivers at one

2    time or another.  These drivers have retained anywhere from one to more than ten sub-drivers during

3    the course of their relationships with defendants.  Some putative class members transitioned to

4    "owner only" roles after hiring sub-drivers, i.e., they had their sub-drivers drive on their behalf for

5    CEVA while personally providing services to other companies.  In addition, some putative class

6    members provided pick-up and delivery services to other companies concurrently with performing

7    services for CEVA.  In contrast, other class members did not have sub-drivers and/or drove

8    exclusively for CEVA while their contract was in force.  Thus, it appears that some putative class

9    members might be found to have been operating businesses distinct from CEVA's business, while

10   for other drivers this factor would weigh in favor of finding an employment relationship.  As in

11   *Spencer*, resolving the "distinct business" factor would require a highly individualized analysis, and

12   that prevents a class action from being able to generate a common answer regarding the *Borello*

13   factors, which must be weighed together for each class member.

14   Plaintiffs argue that courts considering the "distinct occupation" factor often meld it with the

15   inquiry of whether the work is part of the regular business of the principal, which the Ninth Circuit

16   already resolved, *see Narayan*, 616 F.3d at 901 ("The delivery services provided by the EGL drivers

17   were an essential part of the regular business of EGL.").  Some courts do conclude in rapid

18   succession that an individual was not engaged in a distinct occupation but was instead essential to

19   the company's business.  *E.g.*, *Grant v. Woods*, 71 Cal. App. 3d 647, 653 (1977) ("[T]he carriers

20   were not involved in a separate and distinct occupation of their own. To the contrary, they were

21   essential to Grant's business."); *Ybarra v. John Bean Techs. Corp.*, 2012 U.S. Dist. LEXIS 18631 at

22   *37-39 (E.D. Cal. 2012) ("Plaintiff was not engaged in a distinct occupation or business but worked

23   as a general laborer assisting Defendant's regular employees as needed.").  However, it is not clear

24   whether these cases are drawing two separate conclusions or an interrelated, overlapping one.

25   Moreover, other courts consider the "distinct occupation" factor independently and often

26   discuss facts that have little bearing on whether certain work is part of the regular business of the

27   principal.  *See, e.g.*, *Lara v. Workers' Comp. Appeals Bd.*, 182 Cal. App. 4th 393, 407 (2010)

28   (concluding plaintiff was not in a distinct occupation or business based on findings that she was not

1   a skilled worker or one who did specialized work; did not have a business name or business office,

2   and did not advertise; did not have a license; and had no employees); *Arnold v. Mutual of Omaha*

3   *Ins. Co.*, 202 Cal. App. 4th 580, 589-90 (2011) (finding plaintiff was engaged in a distinct

4   occupation requiring a license); *State Compensation Ins. Fund v. Brown*, 32 Cal. App. 4th 188, 203

5   (1995) (finding owner-operator truckers "are engaged in a distinct occupation, one with its own

6   trade association"); *Antelope Valley Press v. Poizner*, 162 Cal. App. 4th 839, 854-55 (2008) (noting

7   lack of evidence that carriers "hold themselves out as being an independent delivery service that

8   happens to have AVP as one of its customers").

9       Thus, there appears to be room in the "distinct business" inquiry to consider the differences

10   in the class members' operations, such as whether they hired sub-drivers and whether they contracted

11   with other companies.  Plaintiffs argue that this conduct would not transform drivers from

12   employees to independent contractors "any more than a law firm's secretary moonlighting for

13   another firm, or even operating her own independent trucking business, would cause her to cease

14   being an employee of the law firm," but plaintiffs cite no authority, and the analogy is inapposite.

15   *But cf. Ware v. Workers' Comp. Appeals Bd.*, 78 Cal. App. 4th 508, 515 (1999) (holding, where

16   employment is presumed, "merely allowing caddying elsewhere, or having another job, does not

17   negate a finding of employment").  The court believes there is a difference between holding multiple

18   jobs and operating a business that provides services to multiple companies, even if both entail

19   personally providing labor to each employer or customer.  It is for a factfinder to decide which

20   description better fits each class member.

21       Plaintiffs also argue that courts have generally rejected challenges based on variations in

22   individual driver operations and have granted class certification based on common evidence going to

23   more probative factors, citing *Smith v. Cardinal Logistics Management Corp.*, 2008 WL 4156364

24   (N.D. Cal. 2008) and *Chun-Hoon v. McKee Foods Corp.*, 2006 WL 3093764 (N.D. Cal. 2006).

25   *Smith* is distinguishable, as the class definition was limited to those who did not employ other

26   drivers to perform work assigned to them by the defendant, and the court explicitly distinguished

27   *Spencer* on that ground.  *Smith*, 2008 WL 4156364 at *3-4, *10 ("Such concerns are inapplicable to

28   the present case, as Plaintiffs' proposed class specifically excludes any Cardinal drivers who hired

ORDER DENYING MOTION FOR CLASS CERTIFICATION—No. C-05-04181 RMW
LJP                                                                                                  9

**United States District Court**
For the Northern District of California

1   other drivers to drive their routes."). *Chun-Hoon* and *Spencer*, however, appear to have reached

2   opposite conclusions after considering many of the same authorities. *Compare Chun-Hoon*, 2006

3   WL 3093764 at *2, *4-5 (citing *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 489 (E.D.

4   Cal. 2006); *Tierno v. Rite Aid Corp.*, 2006 U.S. Dist. LEXIS 71794 (N.D. Cal. 2006); *Sav-On Drug*

5   *Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 334 (Cal. 2004)) *with Spencer*, 2006 WL 6500597 at

6   *14-16 (same).  After considering both decisions and the cases they cite, the court finds the

7   approach in *Spencer* more persuasive.

8          The individual *Borello* factors cannot be applied in isolation, and this court is bound to

9   proceed "with the understanding that no one factor is decisive, and it is the rare case where the

10  various factors will point with unanimity in one direction or the other." *Narayan*, 616 F.3d at 901.

11  The Ninth Circuit has already addressed many of the factors and a significant portion of the

12  evidence in this case. *See id.* at 901-04 (finding sufficient indicia of an employment relationship

13  between CEVA and individual drivers to defeat summary judgment).  However, that court did not

14  consider evidence of the variety in drivers' operations, as none of the appellants had hired sub-

15  drivers.  Thus, one of the core issues remaining for resolution is whether a given driver can be said

16  to be engaged in a distinct business, and how that is weighed in combination with all of the other

17  *Borello* factors. *See Spencer*, 2006 WL 6500597 at *16 (finding the "distinct business" factor was a

18  "core dispute" and thus "the central question in this case is also the most highly individualized").

19  Stated differently, the question remaining after the Ninth Circuit's decision is whether "secondary"

20  factors such as the "distinct business" factor change the balance when considered together with the

21  common factors that the Ninth Circuit has already examined.

22         To ignore the differences in defendants' operations and certify a class would be tantamount to

23  making a substantive finding that this evidence cannot change the outcome. *Cf. Dalton v. Lee Pubs.,*

24  *Inc.*, 270 F.R.D. 555, 563 (S.D. Cal. 2010) (finding some factors had individual proof components

25  but finding one "has low probative value" and concluding "the more important element–the degree

26  of Defendant's control or lack thereof–is subject to common proof based on the uniform contracts");

27  *Norris-Wilson v. Delta-T Group, Inc.*, 270 F.R.D. 596, 608 (S.D. Cal. 2010) (finding differences

28  between putative class members were not "meaningful when it comes to answering the question

United States District Court
For the Northern District of California

whether they are independent contractors or employees" because "[a]t best, they touch on just three of the seven secondary factors articulated in *Borello and Sons*"); *Scovil v. FedEx Ground Package Sys., Inc.*, 2012 WL 3308831 at *7 (D. Me. Aug. 13, 2012) ("I cannot know with certainty what combination of the eight factors will drive the final decision on the merits. But it is highly unlikely that the few factors involving individualized evidence will be the driving determination, especially given FXG's business model."). Without thus pre-judging the weight of the evidence, a class action would yield few if any common answers beyond what the Ninth Circuit has already found, and could not possibly yield an answer to the ultimate question of whether the class members are employees. While class certification may be a blended inquiry into procedural issues and the merits of the case, the court finds plaintiffs have not made a sufficient showing for the court to disregard defendants' countervailing evidence on certain *Borello* factors. *See also Narayan*, 616 F.3d at 901 ("The inferences here are subject to legitimate dispute.").

The court does not ignore the fact that CEVA has standardized many if not all aspects of its relationship with drivers. *Cf. Spencer*, 2006 WL 6500597 at *16 (recognizing "the rhetorical appeal of the *Rite Aid* court's ruling that a defendant who has seen fit to classify its workers in a uniform manner should be hard-pressed to explain why an individualized inquiry is suddenly necessary to determine each worker's correct status"). However, the *Borello* factors suggest that the court cannot look only to the details of the relationship as specified between the two parties but must also consider the employer's and presumptive employee's situations. For example, the *Borello* factors require assessment of the alleged employee's investment in equipment or materials and his employment of helpers, and the nature of the employer's business. The evidence shows that, while they may have each interacted on the same terms with defendants, class members were situated very differently in their operations. Thus, in light of the record in this case, and the issues that must still be resolved in order to adjudicate the class claims, the court finds that common questions do not predominate.

## C.     Class Definition

The court notes that its concerns apply with particular force to class members who hired sub-drivers. However, the mere fact that certain class members did not hire sub-drivers to drive for

United States District Court
For the Northern District of California

CEVA does not provide information about other aspects of their operations, such as whether they contracted out to other companies and whether they generally retained other drivers or owned multiple vehicles.  For example, a class member might have owned an extensive fleet of vehicles and had numerous employees driving for other companies but, for whatever reason, only have driven for CEVA personally.  Individualized inquiry would still be required to distinguish such a driver from an individual who owned a single truck, never hired assistants, and drove exclusively for CEVA, and the former might be found to be an independent contractor while the latter was an employee.  Thus, it does not appear to the court at this time that a certifiable class can be created by narrowing the class definition.

The Drivers without Sub-Drivers Sub-Class as presently defined presents the additional problem that any driver, even if he sometimes hired sub-drivers, would still be a member of that class for the period of time during which he did not have any sub-drivers.  At the hearing, defense counsel also pointed out the reverse problem, in which, for example, the solo driver who hired his brother for three months while on vacation would become a member of the Drivers with Sub-Drivers Sub-Class for that period of time.  Thus, even within the sub-classes, the court finds that common questions do not predominate.

### III.  ORDER

For the foregoing reasons, the court denies plaintiffs' motion for class certification.

DATED:      September 7, 2012

RONALD M. WHYTE
United States District Judge