```
                IN THE UNITED STATES DISTRICT COURT

              FOR THE NORTHERN DISTRICT OF CALIFORNIA

                         SAN JOSE DIVISION



  NARAYAN, ET AL,                    )  CV-05-4181-RMW
                                     )
              PLAINTIFF,             )  SAN JOSE, CALIFORNIA
                                     )
         VS.                         )  MARCH 30, 2012
                                     )
  EGL, INC., ET AL,                  )  PAGES 1-18
                                     )
              DEFENDANT.             )
                                     )


                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE RONALD M. WHYTE
                   UNITED STATES DISTRICT JUDGE


  A P P E A R A N C E S:

  FOR THE PLAINTIFF:       LEONARD CARDER, LLP
                           BY:  AARON KAUFMANN
                           1330 BROADWAY, STE 1450
                           OAKLAND, CA 94612


  FOR THE DEFENDANT:       HUNTON & WILLIAMS, LLP
                           BY:  FRASER MCALPINE
                           575 MARKET STREET, STE 3700
                           SAN FRANCISCO, CA 94105


                APPEARANCES CONTINUED ON THE NEXT PAGE



  OFFICIAL COURT REPORTER:    SUMMER FISHER, CSR, CRR
                              CERTIFICATE NUMBER 13185
```

```
1      APPEARANCES (CONTINUED)

2      FOR THE PLAINTIFF:      ALTSHULER BERZON, LLP
                               BY:  EVE CERVANTEZ
3                                   MATTHEW MURRAY
                               177 POST STREET, STE 300
4                              SAN FRANCISCO, CA 94108

5
       FOR THE DEFENDANT:      HUNTON & WILLIAMS, LLP
6                              BY:  H. ALLISON ELMORE
                               575 MARKET STREET, STE 3700
7                              SAN FRANCISCO, CA 94105

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    SAN JOSE, CALIFORNIA                          MARCH 30, 2012
 2                       P R O C E E D I N G S
 3              (WHEREUPON, COURT CONVENED AND THE FOLLOWING
 4    PROCEEDINGS WERE HELD:)
 5              THE CLERK:   LAST MATTER ON THE CALENDAR CV-05-4181.
 6    NARAYAN VERSUS EGL.  MOTION ON FOR CLASS CERT.
 7       YOUR APPEARANCES, PLEASE.
 8              MR. MCALPINE:   FRASER MCALPINE FOR EGL, INC. AND CEVA
 9    FREIGHT, LLC.
10              MS. ELMORE:   ALLISON ELMORE FOR EGL, INC. AND CEVA
11    FREIGHT, LLC.
12              MS. CERVANTEZ:   EVE CERVANTEZ FROM ALTSHULER BERZON
13    FOR PLAINTIFFS.
14              MR. KAUFMANN:   AARON KAUFMAN FOR PLAINTIFFS.
15              MR. MURRAY:   MATTHEW MURRAY FOR PLAINTIFFS.
16              THE COURT:   ALL RIGHT.
17       I WOULD LIKE TO JUST BRIEFLY ADDRESS THE QUESTIONS THAT I
18    RAISED AND THAT SHOULD DO IT.
19              MS. CERVANTEZ:   YES, YOUR HONOR.
20       SO JUST TO START RIGHT AWAY WITH RESPONSES TO YOUR
21    TENTATIVE, THE SHORT ANSWER IS -- THE ANSWER TO BOTH QUESTIONS
22    IS NO, COMMONALITY AND PREDOMINANCE HAVE NOT DEFEATED EVEN IF
23    THE COURT FINDS THAT THE DRIVER'S BUSINESSES AND HIRING OF SOME
24    DRIVERS IS RELEVANT TO THE EMPLOYEE INDEPENDENT CONTRACTOR
25    ISSUE.
```

1           AND I WOULD LIKE TO GO INTO THAT IN MORE DETAIL, BUT FIRST
2    I WANTED TO JUST BRIEFLY POINT OUT THAT, IN PARTICULAR, ONE OF
3    THE MAIN REASONS THAT THERE'S NOT A PREDOMINANCE ISSUE HERE IS
4    THAT WE PROPOSE SUBCLASSES OF DRIVERS WHO HAVE SUB DRIVERS AND
5    DRIVERS WHO DO NOT HAVE SUB DRIVERS.
6           SO IF NECESSARY, AN INDEPENDENT DECISION COULD BE MADE WITH
7    RESPECT TO EACH GROUP.
8           ALSO, I WANTED TO BACK UP FOR A MINUTE AND REMIND THE COURT
9    THAT THE CLASS AS DEFINED IS ONLY CLASS MEMBERS WHO PERSONALLY
10   DROVE TRUCKS FOR CEVA DURING THE TIME PERIOD THAT THEY WERE
11   DRIVING TRUCKS FOR CEVA.
12          SOMEBODY WHO THEY CALLED AN OWNER ONLY WHO DID NOT ACTUALLY
13   DRIVE, THOSE PEOPLE ARE NOT CLASS MEMBERS.
14          AND THEN BACKING UP FURTHER TO ANSWER YOUR SECOND QUESTION,
15   WOULD A DETERMINATION OF THESE FACTS ARE NOT RELEVANT PREJUDGE
16   THE MERITS?
17          AND THE ANSWER TO THAT AGAIN IS, IT WOULD NOT BE ANY
18   IMPERMISSIBLE PREJUDGING OF THE MERITS, THAT IS DETERMINING THE
19   FACTORS THAT ARE RELEVANT FOR THE MISCLASSIFICATION QUESTION IS
20   SOMETHING THAT THE COURT HAS TO DO IN ORDER TO ADDRESS
21   PREDOMINANCE.
22          THE COURT ALWAYS HAS TO KNOW WHAT THE RELEVANT FACTUAL AND
23   LEGAL ISSUES ARE IN ORDER TO DECIDE WHETHER THEY PREDOMINATE OR
24   NOT.  AND OF COURSE <u>DUKES</u> REQUIRES THE COURT TO LOOK AT MERITS
25   TO THE EXTENT NECESSARY IN ORDER TO DETERMINE THE RULE 23

1 FACTORS.
2 AND HERE, OF COURSE, WE HAVE THE NINTH CIRCUIT'S OPINION IN
3 THIS CASE WHICH SETS FORTH THE RELEVANT FACTORS. AMONG THESE,
4 OF COURSE THE RIGHT TO CONTROL IS THE MOST IMPORTANT FACTOR,
5 THEN THERE'S SECONDARY FACTORS. AND THE WAY THE NARAYAN
6 OPINION LISTS OUT, THERE'S SOME I WANT TO CALL THEM
7 SECONDARY -- SECONDARY FACTORS LISTED AT THE VERY END OF A LONG
8 LIST.
9 AND ONE OF THOSE DOES INCLUDE EMPLOYMENT OF HELPERS.
10 SO IT'S A FACTOR THAT THE NINTH CIRCUIT HAS ALREADY LISTED.
11 AND OF COURSE OUR POSITION IS THAT THERE ARE MANY COMMON
12 FACTORS WITH RESPECT TO THAT ELEMENT OF SUB DRIVERS.
13 ALL DRIVERS HAVE THE SAME OPPORTUNITY TO HIRE SUB DRIVERS,
14 THE SAME OPPORTUNITY FOR PROFIT AND LOSS AND THEY HAVE THE SAME
15 RESTRICTIONS THAT THE SUBDRIVERS HAVE TO BE APPROVED BY CEVA,
16 THEY HAVE TO FOLLOW ALL RESTRICTIONS PUT ON THEM BY CEVA, AND
17 CEVA CAN REALLY FIRE THE SUBDRIVERS.
18 HOWEVER, WE CAN SEE THERE IS ONE DIFFERENCE. WE DON'T
19 THINK IT'S PARTICULARLY RELEVANT FROM A LEGAL MATTER IN
20 DETERMINING WHETHER PEOPLE ARE EMPLOYEES OR INDEPENDENT
21 CONTRACTORS. AND THAT IS -- IT IS TRUE OF COURSE THAT SOME
22 DRIVERS DID ACTUALLY HIRE SUBDRIVERS AND SOME DRIVERS DID NOT.
23 EVEN IF THAT FACTOR IS RELEVANT, IT DOES NOT DEFEAT
24 PREDOMINANCE. WE'VE CITED MANY CASES IN OUR BRIEFS IN WHICH
25 COURTS HAVE CERTIFIED CLASSES ADDRESSING THIS SPECIFIC ISSUE,

|    |    |
|----|----|
| 1  | MISCLASSIFICATION, WHERE THEY LOOK AT IF THE RIGHT TO CONTROL |
| 2  | CAN BE DETERMINED BY COMMON EVIDENCE, AS IT CLEARLY CAN BE IN |
| 3  | THIS CASE. |
| 4  | AND MOST SECONDARY FACTORS CAN BE DETERMINED ON COMMON |
| 5  | EVIDENCE AS IT CAN CLEARLY BE IN THIS CASE.  THEN IF THERE'S |
| 6  | ONE OR TWO MINOR, NOT PARTICULARLY IMPORTANT SECONDARY FACTORS |
| 7  | THAT MAY HAVE SOME INDIVIDUALIZED ELEMENTS IN THEM, THAT DOES |
| 8  | NOT DEFEAT PREDOMINANCE. |
| 9  | PARTICULAR NOTE TWO CASES, THE DALTON CASE AND THE |
| 10 | CCHUN-HOON CASE BY JUDGE WALKER, IN BOTH OF THOSE CASES THERE |
| 11 | WAS THIS SPECIFIC VARIATION, THAT IS SOME OF THE PLAINTIFFS, |
| 12 | SOME OF THE CLASS MEMBERS HAD HIRED EMPLOYEES AND SOME OF THEM |
| 13 | HAD NOT. |
| 14 | AND THE COURTS HELD THAT GIVEN ALL OF THE OTHER FACTORS |
| 15 | THAT COULD BE PROVEN BY COMMON PROOF, THAT DID NOT DEFEAT |
| 16 | PREDOMINANCE. |
| 17 | AND I THINK THE REASON FOR THAT IS IF YOU STEP BACK AND YOU |
| 18 | LOOK AT THE INDEPENDENT CONTRACTOR EMPLOYEE MISCLASSIFICATION |
| 19 | TEST SO TO SPEAK, IT'S NOT ONE OF THESE THREE ELEMENT TESTS |
| 20 | WHERE YOU HAVE TO MEET EACH POINT YOU LOOK AT ALL OF THE |
| 21 | FACTORS TOGETHER IN COMBINATION AND WHEN, AND THAT'S WHAT THE |
| 22 | COURT SAID IN THE NINTH CIRCUIT SAID IN NARAYAN. |
| 23 | AND WHEN YOU HAVE SO MANY FACTORS THAT CAN BE DETERMINED |
| 24 | ONE WAY OR THE OTHER ON THE MERITS, AND OF COURSE YOUR HONOR |
| 25 | ISN'T BEING ASKED TO DECIDE NOW WHETHER CEVA IS EXERCISING |

1    ENOUGH CONTROL OR NOT, BUT WHEN WE GET TO THE MERITS IT WILL
2    CLEARLY SHOW THAT THEY ARE.
3         BUT YOU ARE LOOKING AT -- THERE ARE SO MANY FACTORS THAT
4    ARE PRESENTED ON COMMON EVIDENCE THAT THE FACT THAT THERE'S A
5    FEW THAT ARE NOT, EVEN IF THERE WAS SOME DIFFERENTIATION
6    BETWEEN THE DRIVERS ON THAT FACTOR, YOU WOULD STILL BE ABLE TO
7    MAKE A DETERMINATION FOR ALL THE DRIVERS THAT THEY WERE
8    EMPLOYEES OR THEY WERE INDEPENDENT CONTRACTORS.
9         AND TO THE EXTENT, YOUR HONOR, THAT THERE'S ANY POSSIBLE
10   DOUBT ABOUT THAT, IN THIS CASE WE'VE ALREADY PROPOSED
11   SUBCLASSES WITH SEPARATE SUBCLASS REPRESENTATIVE FOR THE
12   SUBCLASSES AND THERE'S 396 DRIVERS TOTAL.  269 OF THEM, OVER
13   TWO-THIRDS OF THE CLASS NEVER HIRED SUBDRIVERS.  127 OF THOSE
14   DID HIRE SUBDRIVERS.
15        SO EVEN IF THIS FACTOR IS RELEVANT, EVEN IF IT WERE SO
16   IMPORTANT THAT IT COULD MAKE THE DIFFERENCE IN THE
17   DETERMINATION, WHICH WE DON'T BELIEVE IT IS, THERE'S STILL
18   PREDOMINANCE BECAUSE THERE'S PREDOMINANCE WITH RESPECT TO EACH
19   SUBCLASS.
20        IF YOU IMAGINE WHAT WOULD A TRIAL LOOK LIKE, I'M SURE
21   THAT'S REALLY THE CRUX OF THE PREDOMINANCE ISSUE, WHAT IS THE
22   TRIAL GOING TO LOOK LIKE?  WHAT DO WE HAVE TO PUT ON HERE TO
23   PROVE OR DISPROVE THE CASE?
24        AND YOU CAN IMAGINE THAT THERE CAN BE A SPECIAL VERDICT
25   FORM AND IT'S GOING TO ASK TWO QUESTIONS:  WERE THE DRIVERS WHO

```
 1    DID NOT HIRE SUBDRIVERS EMPLOYEES OR INDEPENDENT CONTRACTORS?
 2         AND THEN A SECOND QUESTION, WERE THE DRIVERS WHO DID HIRE
 3    SUBDRIVERS, EMPLOYEES OR INDEPENDENT CONTRACTORS.
 4         SO THERE'S TWO.  THEY'RE CLEARLY DEFINED.  CEVA HAS ALREADY
 5    PROVIDED LISTS THAT HAVE THESE PEOPLE.
 6              THE COURT:  WOULD THEY NECESSARILY BREAK DOWN THAT
 7    WAY?  I MEAN, COULDN'T THERE BE VARIATIONS AS TO THE EXTENT OF
 8    SUB DRIVER HIRING?
 9              MS. CERVANTEZ:  YOU ARE SAYING, IS THERE ANY
10    VARIATION WITHIN THE GROUP WHO DOES HIRE THE DRIVERS.
11              THE COURT:  RIGHT.
12              MS. CERVANTEZ:  IT'S HARD TO IMAGINE HOW THAT WOULD
13    BE RELEVANT AT ALL.
14       IN OTHER WORDS, THEY ARE -- I MEAN, WHETHER SOMEONE HIRED
15    ONE DRIVER OR THREE DRIVER MAKES SOMEBODY AN EMPLOYEE OR AN
16    INDEPENDENT CONTRACTOR, CERTAINLY THE FACTORS DON'T TALK ABOUT
17    THE NUMBER OF EMPLOYEES.
18              THE COURT:  WHY HAVE A SUBGROUP AT ALL?
19              MS. CERVANTEZ:  YOUR HONOR, WE THOUGHT ABOUT THAT AND
20    I THINK THERE'S CERTAINLY CASES THAT HAVE NOT HAD SUBGROUPS
21    BECAUSE WE UNDERSTAND THAT AND WE BELIEVE THAT WITH PROPER JURY
22    INSTRUCTIONS PEOPLE WOULD NOT EVER UNDERSTAND THAT THIS IS NOT
23    REALLY A TERRIBLY RELEVANT FACTOR.  BUT IT IS LISTED THERE AS
24    ONE OF THE QUOTE "SECONDARY SECONDARY FACTORS."
25       AND BECAUSE OF THAT, THE SUBCLASSES MAY BE A BETTER WAY TO
```

1     PUT THIS FORWARD. THERE ARE MANY CASES WHERE THEY CERTIFIED A

2     CLASS AND HAVE NOT BEEN SUBCLASSES. AND THERE'S ALSO CASES

3     WHERE THE PLAINTIFFS HAVE MOVED ONLY, HAVE BROUGHT A CASE ONLY

4     ON BEHALF OF PEOPLE WHO DID NOT HAVE EMPLOYEES.

5         SO IT WOULD CERTAINLY, I BELIEVE BE SEAM TO HAVE ONE CLASS

6     AND NOT TO HAVE THE SUBCLASSES. HOWEVER, TO THE EXTENT THAT

7     THERE'S ANY QUESTION AT ALL ABOUT WHETHER IT COULD BE RELEVANT,

8     THIS I THINK GETS YOU THE BEST OF BOTH WORLDS.

9         IT MAKES A MANAGEABLE TRIAL WITH COMMON EVIDENCE CERTAINLY

10     BETTER TO HAVE A CASE THAT YOU GET EVERYBODY IN, GET THIS

11     DECIDE ONCE AND FOR ALL FOR ALL 396 DRIVERS.

12         THAT WAY IF THERE'S ANY CHANCE AT ALL THAT THAT FACTOR

13     COULD BE THE TIPPING POINT, AND THERE'S ALL OF THESE OTHER

14     FACTORS THAT ARE CLEARLY COMMON FOR EVERYBODY.

15         BUT JUST IN CASE THAT ONE FACTOR COULD BE THE TIPPING POINT

16     WE DON'T REALLY THINK IT WOULD BE BUT JUST IN CASE IT COULD BE

17     THAT'S WHY WE HAVE PROPOSED THE SUBCLASSES.

18             THE COURT: OKAY. LET ME HEAR FROM YOUR OPPOSITION.

19             MS. CERVANTEZ: I'M SORRY, WHAT?

20             THE COURT: LET ME HEAR FROM YOUR OPPOSITION.

21             MR. MCALPINE: THANK YOU, YOUR HONOR.

22     LET ME BEGIN BY FRAMING THE QUESTION AS TO YOUR FIRST

23     QUESTION ON THE TENTATIVE RULING THE WAY THE PLAINTIFFS

24     ORIGINALLY FRAMED IT.

25         IT'S UNDISPUTED THAT THERE ARE SUBSTANTIAL DIFFERENCES

1  BETWEEN THE BUSINESS OPERATIONS OF DIFFERENT MEMBERS OF THE
2  CLASS.
3       THOSE DIFFERENCES ARE QUITE SUBSTANTIAL AND THEY HAVE BEEN
4  SET FORTH IN DR. SLOTTJE'S REPORT.
5       THEY DON'T DISPUTE THAT THERE ARE THESE MAJOR DIFFERENCES
6  BUT THEY INSTEAD SAY THOSE DIFFERENCES ARE IRRELEVANT AND THEY
7  SAY THEY ARE IRRELEVANT BECAUSE IT ONLY MATTERS WHETHER YOU
8  HAVE AN OPPORTUNITY FOR PROFIT OR LOSS IT DOESN'T MATTER HOW
9  MUCH YOU HAVE.
10      NOW THAT POSITION THAT THEY ARE TAKING NOW THAT ONLY THE
11 OPPORTUNITY MATTERS AND NOT THE EXTENT TO WHICH YOU TAKE
12 ADVANTAGE OF THE OPPORTUNITY, IS NOT THE POSITION THEY TOOK
13 BEFORE THE NINTH CIRCUIT AT SUMMARY JUDGEMENT IN THIS COURT.
14      IF YOU LOOK AT THEIR OPPOSITION TO SUMMARY JUDGEMENT WHICH
15 IS DOCUMENT NUMBER 79 FOR MR. NARAYAN, AT PAGE 17 THEY SAY HE
16 HAD LITTLE OPPORTUNITY FOR PROFIT OR LOSS.  AND SO BACK THEN IT
17 MATTERED WHETHER IT WAS A LITTLE OR A LOT.
18      NOW THEY ARE SAYING IT DOESN'T MATTER WHETHER IT'S A LITTLE
19 OR A LOT.  BUT THE CASE LAW SHOW THAT IS IT DOES MATTER.
20      IN THE ORIGINAL ESTRADA VERSUS FEDEX CASE WHICH DEALT WITH
21 FEDEX DRIVERS WHO WERE SINGLE WORK AREA DRIVERS, THE COURT
22 FOUND THAT THERE WAS A NOMINAL OPPORTUNITY FOR PROFIT OR LOSS
23 AND THEREFORE THAT DID NOT WEIGH IN FAVOR OF FEDEX.
24      IN THE FEDEX MDL CASE WHICH WE CITED TO YOU, THE COURT
25 FOUND THAT THE EXTENT TO WHICH DRIVERS TOOK ADVANTAGE OF THE

1    OPPORTUNITY ENTREPRENEURIAL OPPORTUNITY WAS DISPOSITIVE
2    /SKP-FPLT THAT IT MARRIED A LOT WHETHER THEY TOOK ADVANTAGE A
3    LITTLE OR A LOT.
4         SO HERE WE HAVE A SITUATION WHERE WE HAVE DRIVERS WHO ARE
5    IN THE CASE ARE SORT OF A POSTER CHILD, IF YOU WILL, IS JESUS
6    ESTRADA WHO HAS SIX TRUCKS AND SIX DRIVERS AND HE ONLY DRIVES
7    HIMSELF WHEN HIS DRIVERS ARE SICK OR ON VACATION.  SO HE HAS
8    CONTROL WHETHER HE DRIVES AT ALL.
9         AND MR. CERVANTEZ MENTIONED THE CONCEPT OF BEING OWNER
10   ONLY.  WELL, SOME DRIVERS DRIVE AND THEY GO WORK SOMEWHERE ELSE
11   AND OTHERS DRIVE, AND THAT'S AN INDICATION IN THE GREAT AMOUNT
12   OF VARYING WAYS THE DRIVERS EXERCISE OPPORTUNITY TO EXPERIENCE
13   PROFIT OR LOSS.
14        NOW WHAT MR. CERVANTEZ CALLED THE SECONDARY SECONDARY
15   FACTORS ARE WHAT THE SUPREME COURT IN BORELLO CALLED THE SIX
16   FACTOR TEST.  AND THE FIRST FACTOR IN THE SIX FACTOR TEST WAS
17   DRIVER CONTROL.  THE SECOND FACTOR WAS OPPORTUNITY FOR PROFIT
18   OR LOSS.  AND THE THIRD FACTOR IS THE EXTENT TO WHICH PEOPLE
19   USE MATERIALS, EQUIPMENT OR HELPERS.
20        AND SO THOSE ARE -- AND AS THE COURT SAID IN BORELLO, YOU
21   DON'T WEIGH THOSE FACTORS MECHANICALLY.  AND AS MS. CERVANTEZ
22   SAYS, IT DEPENDS ON CONTEXT, AND IT DEPENDS ON THE INDIVIDUAL
23   CIRCUMSTANCES.
24        AND THEREFORE IT MAKES A DIFFERENCE WHETHER THERE'S A
25   LITTLE OPPORTUNITY OR A LOT OF OPPORTUNITY, WHETHER YOU USE A

1   LITTLE BIT OF EQUIPMENT OR A LOT OF EQUIPMENT.
2       AND SO HERE WE HAVE A CLASS THAT IS JUST SIMPLY NOT
3   HOMOGENOUS ENOUGH FOR THERE TO BE A COMMON ANSWER TO THE
4   QUESTION WHETHER THEY ARE ALL INDEPENDENT CONTRACTORS OR ALL
5   EMPLOYEES.
6           THE COURT: THERE'S A PRETTY SIMILAR CASE THAT JUDGE
7   WALKER DECIDED, CORRECT?
8           MR. MCALPINE: IT'S NOT -- THERE'S NOTHING THAT THAT
9   CASE THAT INVOLVES THE EXTENT OF ENTREPRENEURIAL OPPORTUNITY
10  EXERCISED BY THE DRIVERS THAT WE'VE DESCRIBED TO YOU IN
11  DR. SLOTTJE'S REPORT.
12      SO HERE THE LEVEL OF DIFFERENCES BETWEEN THE CLASS MEMBERS
13  IS MUCH MORE SUBSTANTIAL THAN IN JUDGE WALKER'S CASE.
14      AND SO THE KEY HERE I THINK IS TO LOOK AT THE ESTRADA
15  OPINION COMPARING THE DIFFERENCE BETWEEN MULTI-WORK AREA
16  DRIVERS AND SINGLE WORK AREA DRIVERS IN THE FEDEX ARENA BECAUSE
17  THE COURT CAME TO TWO DIFFERENT RESULTS GIVEN THAT.
18      WE DON'T THINK THAT YOU CAN RESOLVE THIS PROBLEM BY
19  SUBCLASSES FOR FOUR REASONS.
20      NUMBER ONE, EVERYBODY WHO WOULD BE IN THE SUBCLASS WOULD
21  ALSO BE IN THE OTHER CLASS BECAUSE NO DRIVER STARTED ON DAY ONE
22  WITH MULTIPLE VEHICLES, EVERYBODY STARTED OFF WITH A SINGLE
23  VEHICLE AND THEN OVER TIME GREW HIS OR HER BUSINESS.
24      SECONDLY -- SO EVERYBODY WHO IS IN THE SUBCLASS IS ALSO IN
25  THE MAIN CLASS.

1          SECONDLY, PEOPLE GO BACK AND FORTH.  AND SO SOMEONE MIGHT
2    HAVE A SUBCONTRACTOR FOR SEVERAL MONTHS AND BUSINESS SLOWS
3    DOWN, THEY LAY THAT SUBCONTRACTOR OFF THEN BRING ONE BACK.
4          SO PEOPLE ARE MOVING IN AND OUT BETWEEN THESE TWO
5    CATEGORIES.  YOU DO NOT HAVE DISTINCT, DIFFERENT POPULATIONS,
6    YOU HAVE ONE POPULATION OF PEOPLE'S WHOSE CHARACTERISTICS
7    CHANGE OVER TIME.
8          THIRD, AND I THINK THIS IS MOST IMPORTANT, WHETHER OR NOT
9    SOMEONE DECIDES TO HAVE A SUBCONTRACTOR IS UNDER THE DRIVER'S
10   CONTROL.
11         YES, THE SUBCONTRACTORS HAVE TO BE APPROVED, AND IF YOU
12   LOOK AT THE RECORD WHAT THEY ARE APPROVED FOR IS WHETHER OR NOT
13   THEY HAVE A VALID DRIVER'S LICENSE, WHETHER THEY COMPLY WITH
14   THE DOT REQUIREMENTS, WHETHER OR NOT THEY HAVE A DUI RECORD,
15   THINGS THAT ARE OBJECTIVE.
16         AND SO THERE'S A PRE QUALIFICATION CHECK LIST.  BUT THE
17   EVIDENCE IS THAT MANY, MANY, MANY SUBCONTRACTORS HAVE BEEN
18   HIRED BY THIS GROUP OF 129 THAT MS. CERVANTEZ DESCRIBED.
19         BUT WHETHER SOMEONE SHOULD BE CONSIDERED AN EMPLOYEE OR NOT
20   AN EMPLOYEE SHOULDN'T DEPEND ON AN ELECTION THAT THAT
21   INDIVIDUAL MAKES AS TO WHETHER HE OR SHE IS GOING TO HIRE A
22   SUBCONTRACTOR.  SO THERE REALLY ISN'T TWO DIFFERENT
23   POPULATIONS.
24         AND THE LAST FACTOR IS THE ONE THAT YOU MENTIONED WHICH IS
25   THERE'S EXTREME VARIATION WITHIN THE SUBCLASS.  IT MAKES A

1   DIFFERENCE WHETHER YOU HAVE -- FOR EXAMPLE, ONE OF THE DRIVERS

2   THAT'S IN THE CLASS CERT RECORD IS PAUL COPELAND WHO EMPLOYED

3   HIS BROTHER FOR THREE MONTHS WHEN HIS BROTHER WAS AN AIRLINE

4   PILOT WHO WAS WITHOUT WORK SO HE DROVE A VAN FOR MR. COPELAND

5   FOR THREE MONTHS.

6       THAT PUTS MR. COPELAND WHOSE BEEN DRIVING FOR CEVA AND EGL

7   DURING THE CLASS PERIOD INTO THE SUBCLASS BECAUSE FOR THREE

8   MONTHS HE HAD HIS BROTHER DRIVE FOR HIM.

9       IT MAKES NO SENSE TO TREAT THESE AS TWO DIFFERENT

10  POPULATIONS, WHETHER A DECISION LIKE MR. COPELAND'S DECISION TO

11  HIRE HIS BROTHER CONVERTS HIM INTO THE SUBCLASS EVEN THOUGH FOR

12  MOST OF THE 11-YEAR PERIOD THAT'S COVERED BY THIS HE WAS

13  DRIVING THE SINGLE TRUCK OF HIS ELECTION.

14      HE TESTIFIED THAT HE KNEW HE HAD THE OPPORTUNITY TO HIRE

15  SUBCONTRACTORS BUT HE DIDN'T WANT THE HASSLE.

16      NOT WANT WANTING THE HASSLE SHOULDN'T BE A FACTOR WHICH

17  DETERMINES WHETHER SOMEONE IS OR IS NOT AN EMPLOYEE.

18          THE COURT: IF YOU WERE GIVEN A CHOICE OF A CLASS

19  ACTION WITH ONE CLASS OR WITH SUBCLASSES, WHAT WOULD YOU

20  CHOOSE?

21          MR. MCALPINE: I DON'T THINK YOU CAN BREAK THIS INTO

22  SUBCLASSES BECAUSE I DON'T THINK THERE ARE TWO DISTINCT

23  POPULATIONS. I DON'T THINK YOU CAN DIFFERENTIATE BETWEEN,

24  AGAIN USING MR. COPE FOR EXAMPLE, SOMEONE WHO FOR THREE MONTHS

25  HAD A DRIVER AND SOMEONE WHO DIDN'T.

1    AND AGAIN, ANOTHER EXAMPLE IS CY PETERS WHO SAYS IN HIS
2    FORMER LIFE BEFORE HE STARTED DRIVING FOR EGL, HE DIDN'T USE
3    SUBCONTRACTORS.  HE MADE THE CHOICE, I DON'T WANT SUB
4    CONTRACTORS.
5    ECONOMICALLY, FROM AN ECONOMIC REALITY PERSPECTIVE, HE'S NO
6    DIFFERENT FROM THE PEOPLE THAT ARE IN THE SUBCLASS THAT THEY
7    PROPOSE.
8    SO I THINK YOU REALLY HAVE ONE POPULATION, AND I DON'T
9    THINK THAT POPULATION -- AGAIN, IF YOU THINK ABOUT -- AGAIN,
10   SHE TALKS ABOUT THE TRIAL, THEY WOULD PARADE FORWARD A BUNCH OF
11   WITNESSES WHO SAID, YOU KNOW, CEVA CONTROLLED MY WORK, THEY
12   MADE ALL THE IMPORTANT BUSINESS DECISIONS FOR ME, AND THEREFORE
13   I SHOULD BE AN EMPLOYEE.
14   WE'LL BRING FORWARD A LOT OF WITNESSES WHO SAY THAT'S NOT
15   MY EXPERIENCE.  CEVA DOES NOT CONTROL THE WAY I DO MY WORK.
16   CEVA DOES NOT CONTROL THE IMPORTANT BUSINESS DECISIONS THEY
17   MAKE ABOUT WHAT KIND OF TRUCKS I'M GOING TO HAVE, HOW MANY
18   TRUCKS I'M GOING TO HAVE, THOSE DECISIONS I MAKE AND I RUN MY
19   BUSINESS.
20   NOW, IN MANY TRIALS YOU HAVE TWO STORIES, BUT WHAT'S
21   UNUSUAL ABOUT HERE IS BOTH SETS OF FACTS CAN BE TRUE.
22   THERE COULD BE DRIVERS THAT TRUTHFULLY TESTIFY THAT CEVA
23   CONTROLS ALL THE IMPORTANT DETAILS AND THEY COULD BE TELLING
24   THE TRUTH ABOUT THAT.  AND YOU HAVE OTHER DRIVERS WHO ARE GOING
25   TO SAY THAT THAT'S NOT TRUE AND THEY COULD BE TELLING THE TRUTH

1       ALSO.
2           SO YOU DON'T HAVE A COMMON STORY HERE, YOU HAVE TWO SETS OF
3       COMPETING FACTS AND THEY CAN'T BE RESOLVED BY WHAT'S THE JURY
4       GOING TO DO WITH THE PEOPLE WHO DON'T TESTIFY?  HOW ARE THEY
5       GOING TO DECIDE WHETHER THEY ARE MORE LIKE THE PEOPLE WE CALL
6       AS WITNESSES OR MORE LIKE THE PEOPLE PLAINTIFF'S CALL?
7               MS. CERVANTEZ:  COULD I BRIEFLY ADDRESS A COUPLE
8       OF --
9               THE COURT:  VERY BRIEFLY.
10              MS. CERVANTEZ:  VERY BRIEFLY.
11          FIRST OF ALL, IN TERMS OF THE ISSUE OF THE SUB CLASSING NOT
12      WORKING.
13          THERE'S 269 DRIVERS WHO NEVER HAD SUBDRIVERS.  THEY DIDN'T
14      GO IN AND OUT, THERE'S NO VARIATION BETWEEN THEM.  THOSE --
15      THAT SUBGROUP CLEARLY ALL THE SAME, AND CERTAINLY THERE'S NO
16      ISSUE THERE IN TERMS OF COMMONALITY.
17          AND THEY ALL OF COURSE HAD THE COMMON OPPORTUNITIES THAT
18      ALL OF THEM UNDER THE CONTRACT COULD HAVE HIRED SUBDRIVERS.  SO
19      EVERYTHING -- THERE'S NOTHING NOT COMMON ABOUT THEM.
20              THE COURT:  WHAT ABOUT A CLASS JUST OF THEM AND
21      NOTHING ELSE?
22              MS. CERVANTEZ:  YOUR HONOR, WE BELIEVE IT WOULD BE
23      MORE EFFICIENT TO GET EVERYBODY IN AND DECIDE THIS ISSUE ONCE,
24      BUT CERTAINLY WE BELIEVE THAT WE SHOULD AT THE VERY LEAST HAVE
25      A CLASS OF ALL OF THE DRIVERS WHO DID NOT HAVE SUBDRIVERS.

1     AND THAT IS TWO-THIRDS OF THE CLASS.  THAT WOULD BE
2  CERTAINLY MUCH MORE EFFICIENT THAN HAVING 269 TRIALS FOR THOSE
3  PEOPLE WHERE EVERYTHING IS COMMON.
4     THE ONLY ISSUE THAT DEFENDANTS RAISED WITH RESPECT TO THAT
5  GROUP, THEY TALK ABOUT CONTROLS AND THEY SAID THAT THERE'S
6  DIFFERENT WITNESSES TALKING ABOUT DIFFERENT THINGS.  BUT
7  REMEMBER THAT THE TEST IN CALIFORNIA AS SET FORTH IN THE
8  NINTH CIRCUIT OPINION, IT'S THE RIGHT TO CONTROL, IT'S NOT
9  ACTUAL CONTROL.
10     AND THE RIGHT TO CONTROL IS VERY CLEARLY SET FORTH IN THE
11  CONTRACT AND IN THE MANUAL AND IN, YOU KNOW, THE VERY THICK
12  PILE OF POLICIES AND PROCEDURES THAT WE UNFORTUNATELY FILED
13  WITH YOU.
14     THE VERY THICK LIST OF CONTROLS AND THOSE, EVERYBODY IS
15  SUBJECT TO THEM.  THE FACT THAT SOMEONE SPORADICALLY MAY HAVE
16  BEEN ABLE TO GET AWAY WITH SOMETHING THAT WASN'T IN THE
17  CONTRACT, THE CONTRACT MAYBE WASN'T ENFORCED ONE TIME, THAT
18  DOESN'T MAKE THEM NOT AN EMPLOYEE UNDER CALIFORNIA LAW.
19         THE COURT:  OKAY.  ALL RIGHT.
20     MATTER WILL BE SUBMITTED.  THANK YOU.
21         MS. CERVANTEZ:  THANK YOU, YOUR HONOR.
22         (WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE
23  CONCLUDED.)
24
25

## CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED TRANSCRIPTION TO THE BEST OF MY ABILITY.

_____
SUMMER A. FISHER, CSR, CRR
CERTIFICATE NUMBER 13185                DATED: 9/24/12